UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD ALAN DUNN,

              Petitioner,

   v.

MAGGIE MILLER-STOUT,

              Respondent.

Case No. C12-652-JCC-BAT

REPORT AND RECOMMENDATION

INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Richard Dunn is a state prisoner who is currently confined at the Airway Heights Corrections Center in Airway Heights, Washington. He seeks relief under 28 U.S.C. § 2254 from his King County Superior Court convictions on charges of first degree kidnapping, first degree child molestation, and possessing depictions of minors engaged in sexually explicit conduct. Respondent filed an answer to the petition and has submitted relevant portions of the state court record for this Court's review. Petitioner filed a response to respondent's answer. This Court, having carefully reviewed the petition, the briefing of the parties, and the state court

REPORT AND RECOMMENDATION - 1

record, concludes that petitioner's federal habeas petition should be **DENIED** and this action should be **DISMISSED** with prejudice.

## FACTUAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts relevant to petitioner's case as follows:

> On June 20, 2001, Dunn kidnapped a six year old boy named D.C. from his apartment complex in Kirkland, Washington. Dunn took D.C. to his apartment, tied him up, and hit him repeatedly with a belt. When D.C.'s mother realized he was missing, she called 911. The people who lived in the apartment below Dunn's saw a sketch of the suspected kidnapper on the news and reported their upstairs neighbor to the police. The police forced entry into Dunn's apartment and found D.C. alone in the master bedroom, on the bed, with his hands bound. D.C. did not report any sexual contact with Dunn, but investigators later found semen in D.C.'s underwear and on his perineum.
>
> Everything Dunn owned or rented was in the name of his partner, Brandon Walcutt. Initially, the police believed Walcutt was the kidnapper because the apartment was in his name. The first warrant to search the apartment listed Walcutt as the primary suspect. But Walcutt had left Dunn in May, 2001, and was living in California. While investigating Walcutt, the police found out that Dunn fit the kidnapper's description. They apprehended Dunn on June 22, 2001.
>
> Earlier that morning, police searched Dunn's apartment, using a warrant listing Walcutt as the primary suspect, and discovered that one of the computers in the second bedroom was still turned on. The warrant authorized the seizure of any computers or related equipment. They unplugged both computers and took them for further investigation. After Dunn's arrest, police got a second warrant listing Dunn as the primary suspect, which specifically provided for a search of the computers seized from his residence. During the second search, they found images of children engaged in sexually explicit conduct and obtained a third warrant to investigate those images. They discovered that his computer was used to download depictions of minors engaged in sexually explicit conduct immediately before he kidnapped D.C. and while the child was in his apartment, including an image entitled "Asian boys nude." D.C. is of Cambodian ancestry. DNA (deoxyribonucleic acid) evidence later linked Dunn to some of the blood found in the bathroom of the apartment and the semen found on D.C.
>
> The State charged Dunn with first degree kidnapping in violation of RCW 9A.40.020(1)(c), first degree child molestation in violation of RCW 9A.44.083, and six counts of possession of depictions of minors engaged in sexually explicit conduct in violation of former RCW 9.68A.070. The State also alleged certain

REPORT AND RECOMMENDATION - 2

aggravating factors, namely that the kidnapping and child molestation involved deliberate cruelty and a particularly vulnerable victim and that Dunn committed the kidnapping and depictions of minors counts with sexual motivation under former RCW 9.94A.127.  Dunn moved to sever the kidnapping and child molestation charges from the depictions of minors counts, but the court denied his motion.  He did not renew this motion after the prosecution rested.  He also moved to suppress the depictions of minors found on his computer, claiming that the search was improper, but the court denied that motion as well.

On November 8, 2004, a jury found Dunn guilty on all counts.  After the jury reached a verdict, the court provided additional instructions on the aggravating factors.  The jury found that the State had proven all of the aggravating factors beyond a reasonable doubt.  The standard ranges for the kidnapping and child molestation counts were 149-198 months each.  The range for possession of depictions of minors engaged in sexually explicit conduct counts was 0-12 months.  On December 28, 2004, the court imposed exceptional sentences of 360 months on the kidnapping and child molestation charges and exceptional sentences of 60 months on each count of depictions of minors.  The court based these exceptional sentences on the aggravating factor found by the jury and ordered that they run concurrently.  With respect to the first degree kidnapping count, the court explicitly stated that each of the aggravating factors, standing alone, justified the imposition of the 360 month exceptional sentence. . . .

(Dkt. 18, Ex. 3 at 2-5 (footnotes omitted).)

## PROCEDURAL BACKGROUND

Petitioner, through counsel, appealed his convictions and his 360 month exceptional sentence to the Washington Court of Appeals.  (*See id*., Exs. 4, 6, 7 and 8.)  On April 23, 2007, the Court of Appeals issued an unpublished opinion affirming the judgment and sentence of the trial court.  (*Id*., Ex. 3.)  Petitioner thereafter filed a petition for review in the Washington Supreme Court.  (*See id*., Ex. 10.)  Petitioner asserted in his petition for review that his convictions for both kidnapping and child molestation violated the prohibition against double jeopardy, that his exceptional sentence violated due process, and that a search warrant authorizing the search of a computer was invalid.  (*See id*., Ex. 10 at 1-3.)  The Supreme Court denied the petition for review without comment on March 5, 2008.  (Dkt. 18, Ex. 11.)  The Court of Appeals issued its mandate terminating direct review on May 14, 2008.  (*Id*., Ex. 12.)

REPORT AND RECOMMENDATION - 3

1   On May 14, 2009, petitioner, through counsel, filed a personal restraint petition in the Washington Court of Appeals. (*Id*., Ex. 13.) Among the claims asserted in the petition were that petitioner was not competent to stand trial and that his trial counsel rendered ineffective assistance when he failed to properly raise and present the competency issue. (*Id*., Ex. 13 at 10-13.) The Court of Appeals summarily rejected petitioner's claims concerning competency as well as two other claims asserted in the petition. (*Id*., Ex. 16.) The Court of Appeals referred other claims to a panel of the court for a determination on the merits. (*See id*.)

On August 9, 2010, the Court of Appeals issued an unpublished opinion with respect to petitioner's remaining claims, granting in part and denying in part petitioner's personal restraint petition, and remanding the matter to the trial court for re-sentencing. (*See id*., Ex. 19.) Specifically, the Court of Appeals vacated five of petitioner's six convictions for possession of child pornography, found petitioner's convictions for kidnapping and child molestation constituted the same criminal conduct for sentencing purposes, and found that at the time of sentencing the superior court lacked the authority to submit the aggravating factors of deliberate cruelty and particularly vulnerable victim to the jury. (*See id*.)

Both petitioner and the state sought review by the Washington Supreme Court of the Court of Appeals' decision. (*Id*., Exs. 20, 21 and 22.) Among the issues presented by petitioner in his motion for discretionary review was that he was incompetent to stand trial and that he should have received an evidentiary hearing on his incompetency claim. (*Id*., Ex. 21 at 6-10.) On February 2, 2011, the Supreme Court issued an order denying the parties' cross-motions for discretionary review without comment. (Dkt. 18, Ex. 23.) The Court of Appeals issued a mandate in petitioner's personal restraint proceedings on March 4, 2011. (*Id*., Ex. 24.)

REPORT AND RECOMMENDATION - 4

On June 3, 2011, petitioner was re-sentenced by the superior court to a total of 250 months confinement. (*Id*., Ex. 1.) Petitioner, through counsel, appealed the new judgment and sentence to the Washington Court of Appeals. (*Id*., Exs. 25, 27 and 29.) On September 17, 2012, the Court of Appeals issued an unpublished opinion affirming petitioner's convictions, but remanding again to the superior court for removal from the judgment and sentence of references to petitioner's previously vacated convictions for possession of child pornography. (*Id*., Ex. 30.) Petitioner sought review in the Washington Supreme Court but the Supreme Court denied review without comment. (*Id*., Exs. 31 and 32.) The Court of Appeals issued its mandate terminating review on February 27, 2013. (*Id*., Ex. 33.) Petitioner now seeks federal habeas review of his convictions.

## GROUNDS FOR RELIEF

Petitioner identifies two grounds for relief in his petition for writ of habeas corpus:

1. Mr. Dunn Was Incompetent During His Trial In Violation of His Fifth and Fourteenth Amendment Due Process Rights.

2. Mr. Dunn was Denied His Sixth Amendment Right to Effective Assistance of Counsel When Counsel Failed to Challenge Dunn's Competency to Stand Trial.

(Dkt. 1 at 5.)

## DISCUSSION

Respondent concedes in his answer to the petition that petitioner properly exhausted his first ground for relief. Respondent argues, however, that petitioner failed to properly exhaust his second ground for relief because he did not present the claim to the Washington Supreme Court for review. Respondent further argues that petitioner's second claim is now procedurally barred under an independent and adequate state law.

REPORT AND RECOMMENDATION - 5

Exhaustion and Procedural Default

A state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1). The exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks and citations omitted). In order to provide the state courts with the requisite "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each appropriate state court for review, including a state supreme court with powers of discretionary review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

It is not enough that all the facts necessary to support a prisoner's federal claim were before the state courts or that a somewhat similar state law claim was made. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). The habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claims. *Id*.

As noted above, petitioner asserts in his second ground for relief that he was denied his right to effective assistance of counsel when his trial counsel failed to challenge petitioner's competency to stand trial. A review of the record reveals that while petitioner presented this claim to the Washington Court of Appeals in his personal restraint petition, he did not present the claim to the Washington Supreme Court in either his motion for discretionary review or in his brief in support of his motion for discretionary review. (*See* Dkt. 18, Exs. 20 and 21.) Petitioner, in his response to respondent's answer, maintains that he did exhaust his ineffective assistance of

REPORT AND RECOMMENDATION - 6

counsel claim but offers no argument to support that proposition.[1] (*See* Dkt. 27 at 2.) And, in fact, the record makes clear that petitioner did not properly exhaust the claim.

Respondent argues that petitioner, having failed to properly exhaust his ineffective assistance of counsel claim, would now be barred from presenting the claim to the state courts under RCW 10.73.140 which bars the filing of a successive personal restraint petition absent a showing of good cause. *See also*, Rule 16.4(d) of the Washington Rules of Appellate Procedure. Because petitioner presented the ineffective assistance of counsel claim at issue in these proceedings to the Court of Appeals in his prior personal restraint petition, but then abandoned the claim when he sought review in the Washington Supreme Court, the state courts are unlikely to entertain the same claim in a subsequent personal restraint petition. *See* RCW 10.73.140. This Court therefore concludes that petitioner has procedurally defaulted on his ineffective assistance of counsel claim.

When a state prisoner defaults on his federal claims in state court, pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner makes no effort to demonstrate cause or prejudice for his default. He therefore fails to demonstrate that his ineffective assistance of counsel claim is eligible for federal habeas review. Accordingly, this Court recommends that petitioner's federal habeas petition be denied with respect to his second ground for relief.

---

[1] Petitioner explains in his response that because respondent concedes that petitioner exhausted his due process claim, and because the evidence supporting both of his claims is "essentially identical," he addresses only the due process claim in his responsive brief. (Dkt. 27 at 2 n.1.)

REPORT AND RECOMMENDATION - 7

Standard of Review for Exhausted Claim

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a petition for writ of habeas corpus may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See Williams*, 529 U.S. at 407-09. The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id*. at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

REPORT AND RECOMMENDATION - 8

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Competence to Stand Trial

Petitioner asserts in his first ground for relief that he was not competent during his trial because he was not able to rationally assist his counsel. It is well established that a criminal defendant cannot be tried unless he is competent. *Moran v. Godinez*, 509 U.S. 389, 396 (1993) (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966)). The Supreme Court has held that the standard for determining competence to stand trial is "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Godinez*, 509 U.S. at 396 (quoting *Dusky v. United States*, 362 U.S. 402 (1960)). A state court's finding that a defendant was competent to stand trial is a factual question which is entitled to a presumption of correctness on federal habeas review. *Langford v. Day*, 110 F.3d 1380, 1390-91 (9th Cir. 1996); *Moran v. Godinez*, 57 F.3d 690, 696 (9th Cir. 1995). Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Prior to trial, petitioner was sent to Western State Hospital ("WSH") for an evaluation of his competency to stand trial. The Forensic Psychological Report prepared by the WSH psychologist stated as follows with respect to the issue of competency:

> While Mr. Dunn has refused to partake in interviews, except briefly with Dr. Waiblinger, and the sanity commission has not been able to ask the usual competency questions, a careful review of the records and careful observation do not reveal any data that preclude the presumption that Mr. Dunn has the requisite

REPORT AND RECOMMENDATION - 9

>    capacities to proceed to Court.  Mr. Dunn's level of intellectual functioning is presumed to be above average based on his vocabulary, his apparent completion of community college courses and some success in his chosen vocation of collections.  While he, at times, makes bizarre remarks, they are constricted to limited topics and his general manner is more suspicious and cynical than outright delusional.  The bizarre remarks are generally possible if not plausible.  He is generally uncooperative but can choose to cooperate, as when he agreed to converse with Dr. Waiblinger and informed him he was declining to be interviewed because of the seriousness of his legal circumstances and further informed him that he did not wish to take medication.  He is not considered to have intellectual deficits or a major mental disorder that would prevent him from proceeding to Court, and he is considered to have the capacity to understand the nature of the proceedings against him and to assist his attorney in his defense.  He was also considered to have the capacity to enter a plea to the charges.

(Dkt. 18, Ex. 38 at 11.)

At a subsequent hearing before the trial court, petitioner's counsel represented that petitioner was not challenging competency and that he had, in fact, always maintained he was competent to stand trial.  (Dkt. 18, Ex. 39 at 3 and 6.)  The trial court thereafter entered findings of fact and conclusions of law setting forth its findings that petitioner understood the nature of the proceedings again him and was able to effectively assist counsel in his defense, and its conclusion that petitioner was therefore competent to stand trial.  (*Id*., Ex. 34.)

Petitioner raised the issue of competency for the first time in his personal restraint petition following his first appeal.  The Court of Appeals, in its discussion of this issue, first identified the standard for competency; *i.e.*, "[a] defendant is competent to stand trial if he is able to appreciate the nature of the proceedings and to assist with his defense." (*Id*., Ex. 16 a 9 n.18 (citing *State v. Benn*, 120 Wash. 2d 631 (1993)).)  The Court next related the conclusion of the WSH psychologist set forth in the Forensic Psychological Evaluation and quoted above.  The Court of Appeals then went on to analyze petitioner's competency claims as follows:

>    Dunn now claims for the first time that the trial court or defense counsel were required to revisit the finding of competency based on Dunn's "delusional" comments at trial.  For the first time in his reply brief, Dunn provides citations to

REPORT AND RECOMMENDATION - 10

> the record to support his claim.  For example, Dunn objected to the completed jury questionnaires and complained that he would not have a fair trial unless potential jurors were questioned about potential biases based on sexual orientation.  Despite the trial court's assurance that defense counsel could ask such questions in voir dire, Dunn continued to argue and request an opportunity to pursue an interlocutory appeal of the trial court's refusal to prepare an additional questionnaire.  At another time, Dunn claimed that a video tape had been tampered with based on a discrepancy between the numbers showing on the tape player at different times during trial.
>
> Although these and other claims and statements Dunn made during the proceedings could be described as bizarre and argumentative, Dunn identifies nothing in the record that is inconsistent with the evaluation upon which the trial court relied to find him competent.  Rather, the record indicates that Dunn appeared to understand the nature of the proceedings, the seriousness of the charges, and the role of his attorney and that his comments were concerned with the fairness of the trial and his ability to actively participate in his defense.  Dunn's self-serving conclusory allegation that his comments were "delusional" does not provide grounds for relief.  And Dunn fails to identify any evidence in the record to indicate that his attorney was unable to communicate with him during trial or had any reason, beyond those indicated in the evaluation, to question Dunn's ability to understand the proceedings against him or assist in his defense.  On this record, Dunn fails to make a prima facie showing of incompetence requiring a reference hearing.  Moreover, Dunn fails to provide any authority indicating that the type of behavior he exhibited at trial necessarily requires either the trial court or defense counsel to revisit a competency finding.  This claim clearly lacks merit.

(Dkt. 18, Ex. 16 at 10-11.)

Petitioner asserts in these proceedings that this decision of the Washington Court of Appeals constitutes an unreasonable application of federal constitutional law and was based on an unreasonable determination of the facts.  Petitioner argues that the state courts' determination that he was competent was based entirely on his cognitive ability and that it ignored the functional aspect of competency.  Petitioner maintains that his behavior and statements at trial demonstrate that he was unable to make rational choices and was unable to meaningfully communicate, and he asserts that the state court erred by failing to address the functional component of the competency determination.

REPORT AND RECOMMENDATION - 11

This Court's review of the record makes clear that the trial court properly considered the competency question pretrial and concluded, as a part of the competency determination, that petitioner had the capacity to effectively assist counsel in his defense.  Petitioner fails to rebut by clear and convincing evidence the state court's factual conclusion that he was competent to stand trial.  Petitioner also fails to identify any clearly established federal law which would have required the trial court, in the circumstances presented here, to revisit the competency finding during trial.  Accordingly, the state court's decision cannot be deemed contrary to, or an unreasonable application of, clearly established federal law.  Petitioner's first ground for federal habeas relief should therefore be denied.

Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to either of his claims for federal habeas relief.

CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's petition for writ of habeas corpus be **DENIED** and that this action be **DISMISSED** with prejudice.  This Court

REPORT AND RECOMMENDATION - 12

further recommends that a certificate of appealability be **DENIED**.  A proposed order accompanies this Report and Recommendation.

Any objections to this Recommendation must be filed and served upon all parties no later than **December 11, 2013.**  If no objections are filed, the matter will be ready for the Court's consideration on **December 13, 2013**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve (12) pages.  The failure to timely object may affect the right to appeal.

DATED this 27th day of November, 2013.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13